**IN THE DISTRICT COURT FOR THE UNITED STATES**

**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. NO. 07-32ML |
| | ) | |
| PATRICK CLYNE | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS**
**<u>TO THE PRESENTENCE INVESTIGATION REPORT</u>**

The United States of America, by and through its undersigned Assistant United States Attorney, respectfully submits this Response to the defendant's Objections to the Presentence Investigation Report (PSI). In a letter to U.S. Probation Officer Heather McLoughlin dated October 11, 2007, the defendant set forth four objections to the PSI, only one of which affects the Guideline calculation. This Response addresses that objection, which is to para. 21 of the PSI, wherein the Probation Office recommended a 2 level Adjustment under Guideline § 3B1.3 for Abuse of Position of Trust or Use of Special Skill.

The defendant asserts that there should be no enhancement for abuse of a position of trust. His position is not supported by either the record or the case law.

U.S.S.G. § 3B1.3 provides that "[i]f the defendant abused a position of public or private trust, or used a special skill, in a manner that significantly facilitated the commission or concealment of the offense, increase by 2 levels." It is critical that the applicable guideline provision is written in the disjunctive - an enhancement is appropriate for **either** an abuse or position of trust, **or** use of a special skill. U.S.S.G. § 3B1.3. In this case, the defendant meets both criteria.

With respect to the first criteria, abuse of position of trust, Application note 1 to the guideline states:

> 'Public or private trust' refers to a position of public or private trust characterized by professional or managerial discretion (i.e., substantial discretionary judgment that is ordinarily given considerable deference). Persons holding such positions ordinarily are subject to significantly less supervision than employees whose responsibilities are primarily non-discretionary in nature. For this adjustment to apply, the position of public or private trust must have contributed in some significant way to facilitating the commission or concealment of the offense (e.g., by making the detection of the offense or the defendant's responsibility for the offense more difficult). ...

U.S.S.G. § 3B1.3, comment. (n.1).

Determining whether a position of trust enhancement applies requires the sentencing court to conduct a two-step inquiry. First, the court must determine whether the defendant occupied a position of trust. If so, the court must then determine whether the defendant used that position to facilitate or conceal the offense. See United States v. Roman, 485 F.3d 185, 190 (1st Cir. 2007); United States v. Reccko, 151 F.3d 29, 31 (1st Cir. 1998).

In the case at bar, the defendant's position facilitated both the commission of the offense, as well as its concealment. The Prosecution Version of the offense, set forth in para. 12 of the PSI, in addition to the factual basis for the plea that was agreed to by the defendant at the plea hearing, reveal the following circumstances regarding the defendant's position of trust.

In 1997 the Rhode Island School of Design (RISD) hired the defendant, a Master Electrician, to the fill the position of Fire Safety Electrician. In that position, the defendant was responsible for overseeing and maintaining fire safety related equipment in all RISD buildings. He was responsible for determining whether fire safety systems were functioning properly, and to

maintain and install any required systems. He also had the authority to request, schedule and approve work relating to fire safety, and to hire outside contractors to perform this work when necessary. When outside contractors were hired, the defendant was responsible for insuring that the work was performed properly, and if so, to approve payments to contractors. The defendant signed invoices from outside contractors approving them for payment, and then forward the approved invoices to the RISD Purchasing Department. Based on the defendant's approval, the Purchasing Department would cut a check to the contractor.

Between October 1997, and October 2005, the defendant approved for payment false and fraudulent invoices from Ankh Electric, and then forwarded the approved invoices to the RISD Purchasing Department for payment. The services described on these false invoices included items such as upgrading fire alarm systems, installing wiring to fire pumps, replacing duck smoke detectors, replacing tamper switches, replacing room smoke detectors, upgrading fire alarm panels, replacing smoke detectors in elevator shafts, replacing old fire alarm pull stations, repairing electrical service to fire pumps, replacing fire alarms, repairing emergency lighting, and replacing evacuation strobes. Based on the Ankh Electric invoices that were approved for payment by the defendant, the RISD Purchasing Department authorized payments to Ankh Electric, which resulted in the issuance of RISD checks payable to Ankh Electric.

The defendant was hired to oversee fire safety equipment in all of the RISD buildings, and was the head fire safety expert at the school. The school relied upon the defendant to determine whether buildings required fire safety repairs or improvements, to determine whether this work should be performed in-house or by outside contractors, and to determine whether the completed work was adequately performed. The defendant's actions in these areas were not

supervised by anyone at a higher level. In addition, when work was performed by outside contractors, not only did the defendant determine whether the work was adequately performed, but he also possessed authority to approved invoices for payment. Once the approved invoices were sent to the RISD Purchasing Department, that office issued its checks to the contractors as a ministerial function.

These circumstances clearly establish the two prongs required by the First Circuit for the abuse of trust enhancement. First, it is clear that the defendant exercised substantial discretionary judgement, and that RISD relied upon his judgment in these areas. Second, it is clear that the defendant's position of trust allowed him to both commit and conceal the commission of the offense. The entire fraudulent scheme hinged on the fact that RISD relied upon the defendant's discretionary judgement in the field of fire safety, and that the defendant exercised discretion in determining both the nature of work needed to be performed and whether it was performed property. The defendant's position of trust also gave him the discretion to hire outside contractors (i.e. Ankh Electric). Finally, the defendant's position of trust included the authority to approve for payment invoices from contractors.

As the First Circuit noted in United States v. Chanthaseng, 274 F.3d 586, 589 (1st Cir. 2001), a position of trust is "characterized by professional or managerial discretion." In Chanthaseng, the Court approved of an abuse of trust enhancement for a bank employee who defrauded the bank by exercising her authority in countersigning rapid deposit tickets. The Court noted that this authority, combined with the fact that only a few personnel within the bank had this authority, was evidence of an abuse of trust. In addition, the Court noted that since the defendant had final authority in approving these tickets, and could do so without oversight, this

facilitated her concealment of the crime. Likewise, Clyne had the authority to approve the Ankh invoices for payment, and did so free from the danger of oversight.

In similar circumstances, the Fourth Circuit Court of Appeals, in United States v. Stone, 85 Fed.Appx. 925 (4th Cir.), cert. denied, 541 U.S. 1074 (2004) (unpublished), upheld the district court's finding of abuse of trust involving an electrician. In Stone, the defendant was the lead electrician at a General Services Administration (GSA) facility. He had the authority to determine whether electrical repairs could be performed in-house or needed to be outsourced to a private contractor. The defendant approached contractors who were working at the facility and had them submit false or inflated invoices for payment. The defendant categorized the work as being for emergency work, thereby giving him the authority to approve the work. The defendant received kickbacks on the false invoices. In upholding the enhancement for abuse of trust, the Court noted that:

> [The defendant] exercised enormous discretion: as a lead electrician, [the defendant's] judgments with respect to necessary repairs ordinarily received great deference. [The defendant] had knowledge about electrical repairs that the building managers who signed off on the Forms 2010 did not. This specialized knowledge allowed him to earn a "position of trust within the employment hierarchy and nobody looked over his shoulder." .... In short, [the defendant] was entrusted with responsibilities beyond those of other electricians and repairmen at [the facility].
>
> The evidence also clearly shows that [the defendant] used his position in a manner that significantly facilitated the commission or concealment of the crime. He was the initiator of the fraud scheme, he instructed others on how to defraud GSA and on how to avoid detection, and significantly, he was in charge of the electrical repairs that were the basis of the fraud scheme. ... [The defendant's] instructions to [contractors] about how to prepare invoices and submit inflated and false Forms 2010 were designed to aid in the commission and concealment of the fraud scheme.

> [The defendant's] actions significantly facilitated the fraud and constituted an abuse of his position as "lead electrician." Accordingly, we conclude that the district court did not err in increasing [the defendant's] guideline range by two levels for abusing a position of trust.

In the case at bar, Clyne's ability to commit and conceal his fraudulent conduct over a period of eight (8) years was due precisely to his position of trust at RISD, and his abuse of that position of trust during this period of time.

Moving on to the second phrase of the provision for adjustment, § 3B1.3 provides for an enhancement if the defendant used a special skill. Again the Guideline notes are instructive. "'Special skill' refers to a skill not possessed by members of the general public and usually requiring substantial education, training or licensing. ..." U.S.S.G. § 3B1.3, comment. (n. 4). The observations of the First Circuit in United States v. Noah, 130 F.3d 490 (1st Cir. 1997), should also be noted. In that case, the Court held:

> ... nothing in the guidelines suggests that the specialness of the faculty necessarily hinges on the complexity of the task to be performed. See United States v. Lewis, 41 F.3d 1209, 1214 (7th Cir. 1944) (noting that even if an average person can accomplish a task at which someone with special training or skill is adept, "that fact alone does not . . . convert the activity in question into an ordinary or unspecialized activity"). Thus, . . . we hold that a skill can be special even though the activity to which the skill is applied is mundane. The key is whether the defendant's skill elevates him to a level of knowledge and proficiency that eclipses that possessed by the general public. [Citations omitted.]

Id. at 500.

As noted above, the defendant was hired as a Master Electrician (required substantial training and licensing) due to his expertise in the field of fire safety. In his application to RISD, the defendant stated that he was a Master Electrician, and that he had:

> extensive knowledge and experience in installations, maintenance, and trouble-shooting the following systems: Fire Alarm Systems ... Security Systems ... Card Access Systems ... Carbon Monoxide Detection Systems ... CCTV Systems ... Emergency Life Saving Systems ... Temperature Control Systems ... Call Systems ... Data Communication Systems ... Telephone Multilink Systems ... [and] Commercial Satellite Dish ...

He also represented that he had "a good working knowledge of the current rules, regulations, and codes for the State of R.I. in these systems installations." In another letter to RISD, he stated that:

> [t]he systems mentioned in the ad. all come under the umbrella of a R.I. Master electricians license. It has been my good fortune to have been exposed to and gained an excellent knowledge of the ever growing and changing technology of these systems.

In committing the offense, the defendant prepared fraudulent Ankh invoices which he forwarded to the RISD Purchasing Department for payment. The services described on these false invoices included items such as upgrading fire alarm systems, installing wiring to fire pumps, replacing duck smoke detectors, replacing tamper switches, replacing room smoke detectors, upgrading fire alarm panels, replacing smoke detectors in elevator shafts, replacing old fire alarm pull stations, repairing electrical service to fire pumps, replacing fire alarms, repairing emergency lighting, and replacing evacuation strobes.

It was precisely because of his expertise that RISD relied upon the defendant to render final decisions about work that needed to be performed, whether outside contractors were required to perform the work, and whether the work was carried out in a proper fashion. In addition, in committing the offense the defendant prepared, approved and submitted fraudulent Ankh Electric invoices to the RISD Purchasing department. The defendant used his skills in the field of fire safety to fabricate a multitude of descriptions of fire safety work to include on the

Ankh invoices, thereby making them appear to be for legitimate work.

For all of the foregoing reasons, the government respectfully urges this Court to adopt the recommendation of the Probation Office by imposing a 2 level adjustment for Abuse of Position of Trust or Use of Special Skill under Guideline § 3B1.3.

Respectfully Submitted,

UNITED STATES OF AMERICA

By its Attorneys,

ROBERT CLARK CORRENTE
United States Attorney

/s/ Andrew J. Reich
ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5001 (fax)
email: andrew.reich@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on the 17th day of October, 2007 I caused the within Government's Response to be electronically filed with the United States District Court for the District of Rhode Island, using the CM/ECF system and served by electronic notification upon:

Scott Lopez, Esq.
24 School St.
8th Floor
Boston, MA 02108

U.S. Probation Office

/s/ Andrew J. Reich

ANDREW J. REICH
Assistant United States Attorney
U.S. Attorney's Office
50 Kennedy Plaza, 8th Floor
Providence, RI 02903
(401) 709-5000
(401) 709-5001 (fax)
email: andrew.reich@usdoj.gov